UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JUANCHENG KANGTAI CHEMICAL CO., LTD. and HEZE HUAYI CHEMICAL CO., LTD.,<br><br>    Plaintiffs,<br>  v.<br><br>UNITED STATES,<br>    Defendant. | Court No. 24-00026 |

## COMPLAINT

On behalf of Heze Hauyi Chemical Co., Ltd. ("Heze Huayi") and Juancheng Kangtai Chemical Co., Ltd. ("Kangtai") (collectively, "Plaintiffs"), exporters of subject merchandise, we hereby bring this civil action and allege the following:

### Parties

1. Plaintiffs are Chinese exporters of chlorinated isocyanurates during the period of review, June 1, 2021 through May 31, 2022, that timely filed pleadings before the administering authority.

2. Defendant is the United States of America acting by and through the U.S. Department of Commerce (the "Department").

### Jurisdiction

3. This action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(I) and (B)(iii) to contest the Department's final results of review under 19 U.S.C. §1675. *See Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty*

1

*Administrative Review, 2021-2022,* 89 Fed. Reg. 455 (January 4, 2024), *incorporating* Decision Memorandum ("IDM"). Accordingly, this Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).

### Standing

4. Plaintiffs are foreign exporters of subject merchandise that participated in the administrative review resulting in the contested determination. Accordingly, Plaintiffs are an interested party within the meaning of 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A).

5. In addition, because the Department's final results overstated Plaintiffs' antidumping duty margins, Plaintiffs have been adversely affected or aggrieved by agency action within the meaning of Section 702 of Title 5 of the United States Code. Therefore, Plaintiffs have standing to bring this action under 28 U.S.C. § 2631(c).

### Timeliness

6. Notice of the *Final Results* was published in the *Federal Register* on January 4, 2024. Plaintiffs filed a summons instituting this action on February 5, 2024, within 30 days of said publication, serving notice of the action upon all other participants in the investigation on the same date. Plaintiffs are filing this complaint within thirty days after filing the aforementioned summons. *See* USCIT Rule 6(a). Therefore, Plaintiffs have commenced this action within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rule 3 of the Rules of this Court.

### Facts

7. The antidumping duty order at issue covers chlorinated isocyanurates, which may be processed in various forms, commonly including, for example, swimming pool

additives.

8. Because this was a nonmarket economy order, the Department generally does not use respondents' actual cost records to value its inputs, home market sales, and financial statements for the purposes of calculating the normal value (a special form of constructed value particular to nonmarket economy investigations). Rather, the Department selects surrogate values from a surrogate country.

9. Petitioner argued that Mexico should be selected as the primary surrogate country and submitted a Mexican surrogate value record. Plaintiffs argued that Malaysia should be selected as the primary surrogate country and submitted a Malaysian surrogate value record. In petitioner's final surrogate value submission, petitioner submitted a Romanian record, despite not timely arguing that the Department should rely on Romania on the surrogate country or preliminary surrogate value deadlines.

10. In the Preliminary Results, the Department selected Romania as the primary surrogate country. The Department properly did not rely on Mexico because Mexico is not at the same level of economic development as China. In choosing between Malaysia and Romania, the Department found that the Romanian labor and water was superior and selected Romania as the primary surrogate country.

11. Plaintiffs argued that the Department improperly considered Romania as a primary surrogate country. The Department set clear deadlines to suggest a primary surrogate country and petitioner failed to submit Romania should be selected by this deadline. In fact, petitioner failed to submit a Romanian record until the final surrogate value deadline when it was too late for Plaintiffs to submit alternative surrogate values in rebuttal. Plaintiffs were unfairly

disadvantaged by petitioner's late filing of Romania.

12. Plaintiffs also argued that the Department should select Malaysia as the primary surrogate country in the Final Results because, among other data quality advantages, Malaysia sourced multiple highly comparable financial statements while Romania only sourced one financial statement. Malaysia also did have a reliable and superior labor rate to Romania, Romania lacked a B&H value, and Romania's water rate was not superior to Malaysia.

13. Further, Romania lacked a suitable chlorine value. The Romanian chlorine value is unreliable, with unexplained 0 line items and very small import quantities. This is a critical raw material and Romania's lack of a reliable value also weighed in selecting Malaysia.

14. Nonetheless, in the Final Results the Department continued to rely upon Romania.

15. This appeal ensued.

## COUNT I

16. The allegations of paragraphs 1 through 15 are restated and incorporated herein by reference.

17. The Department's consideration of Romania when the country was not submitted by the surrogate country deadline is contrary to its normal practice and thus is arbitrary and capricious. *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (It is well-established that "[a]n agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently.").

## COUNT II

18. The allegations of paragraphs 1 through 17 are restated and incorporated herein

by reference.

19.  The record as a whole did not support the selection of Romania as the primary surrogate because there was better quality data available in Malaysia. As such, the Department's determination to rely upon Romania was unsupported by substantial evidence. *See* 19 U.S.C. §1677b(c)(1) (requiring the Department to rely upon the "best available information" for the surrogate values); 19 U.S.C. §1516a(b)(1)(B)(i) (the Court shall hold unlawful Department decisions that are unsupported by substantial evidence).

## COUNT III

20.  The allegations of paragraphs 1 through 19 are restated and incorporated herein by reference.

21.  The Department did not select the "best available information" for the surrogate value of chlorine, contrary to 19 U.S.C. §1677b(c)(1). As such, the Department's choice of surrogate value was unlawful and unsupported by substantial evidence. 19 U.S.C. §1516a(b)(1)(B)(i).

## Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the defendant:

(1)  Declaring the Department's consideration of Romania as a potential primary surrogate country is arbitrary and capricious; and

(2)  Declaring the Department's selection of Romania as the primary surrogate country unsupported by substantial evidence; and

(3)  Declaring that the Department's choice of surrogate value for chlorine was unsupported by substantial evidence and contrary to practice; and

(4)     Granting Plaintiffs such other relief as the Court may deem appropriate, including remand to the Department for reconsideration of timely submitted surrogate country and data submissions.

                                      Respectfully submitted,

                                      /s/ Gregory S. Menegaz
                                      Gregory S. Menegaz
                                      Alexandra H. Salzman
                                      Vivien Jinghui Wang
                                      **DEKIEFFER & HORGAN, PLLC**
                                      Suite 1101
                                      1156 Fifteenth Street, N.W.  20005
                                      Tel: (202) 783-6900
                                      Fax:  (202) 783-6909
                                      email:  gmenegaz@dhlaw.com

Dated:  March 6, 2024